IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LAMAR SMALLS,

                Plaintiff,

v.

OFFICER McALLISTER, OFFICER SCHMIDT,      OPINION and ORDER
OFFICER CURTIS, OFFICER MEUNIER,
OFFICER WEBSTER, RENEE KRUEGER,            19-cv-679-jdp
JOHN OURADA, BRUCE SUNDE,
PAUL WESTERHAUS, and ED WALL,

                Defendants.

---

Plaintiff Lamar Smalls, appearing pro se, alleges that while he was housed at Lincoln Hills School, state officials violated his constitutional rights by physically and sexually abusing him when they responded to a fight. Smalls also alleges that defendants failed to provide him with adequate medical care for injuries he sustained as a result of the abuse and failed to take action to stop a pattern of abuse at the facility.

Defendants have filed a motion for summary judgment. There are genuine disputes of material fact regarding whether staffers beat him, sexually assaulted him, or refused him medical care, so I will deny defendants' motion for summary judgment on the claims against the officials directly involved in those incidents. I will grant defendants' motion on Smalls's claims against supervisory officials because he fails to provide evidence that they disregarded the danger facing him.

UNDISPUTED FACTS

On September 10, 2014, Smalls was a juvenile detainee at Lincoln Hills School, in Irma, Wisconsin, and was housed in Dubois Cottage. That day, he was involved in a physical altercation with two other juvenile detainees.

Smalls says that in response to the altercation, the following events took place. Defendant officer James Schmidt slammed Smalls onto the floor, punched, kicked, and elbowed him, "viciously" kneeled on the back of his head, and twisted his arm hard enough to "nearly break[] it." Dkt. 47, ¶ 7. Officers Curtis and Webster also beat Smalls. Officer Webster then dragged Smalls to a van by his hair to be transported to the segregation unit. Officers McAllister and Meunier assisted Webster in bringing Smalls to the van, continuing to beat him while they did so. Once inside the van, McAllister choked Smalls with both hands "till the point [Smalls] thought [he] would die." *Id.*, ¶ 11.

Smalls says that after arriving at the segregation unit, Webster and Meunier strip searched him: they forcibly removed his clothing, forced his legs open, ran their hands through his buttocks, and "roughly yank[ed]" his penis and testicles, asking Smalls if he liked it. *Id.*, ¶¶ 9, 10. They laughed at him and "made comments at the size of [his] penis." *Id.*, ¶ 9. They told him that if he sought medical attention or reported the abuse, they would "bury" him. *Id.*, ¶ 12.

Smalls says that after these assaults, unit manager Renee Krueger visited him in the segregation unit, where Smalls told her about the physical and sexual abuse that had just occurred. Smalls showed Krueger his cuts and bruises, but she declined to provide him with medical care, stating that he "probably deserved the beating" that he had received and that

there was no reason to bother the Lincoln Hills medical staff with what she called minor injuries. *Id.*, ¶ 13.

Smalls complained to Lincoln Hills superintendent John Ourada about the incident and Ourada responded by threatening to punish Smalls if he did not stop bringing up the abuse. About a year after the incident, Smalls wrote a letter to Director of Juvenile Corrections Paul Westerhaus, complaining of abuse and asking Westerhaus to contact him. Around the same time, Smalls also wrote a letter to the Lincoln Hills superintendent's office. Dkt. 47-3. He also complained of abuse in the exit evaluation form he completed when he was released from Lincoln Hills in early 2016. During the events at issue, defendant Ed Wall was the secretary of the state Department of Corrections, and defendant Bruce Sunde worked at Lincoln Hills as the youth security director. There is no evidence that they reviewed any of the correspondence Smalls discusses.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Smalls brings the following claims:

- Fourteenth Amendment claims against defendants Schmidt, Curtis, McAllister, Meunier, and Webster for beating him following an altercation with other detainees.

- Fourth and Fourteenth Amendment claims against Meunier and Webster for unreasonably strip searching him.

- A Fourteenth Amendment claim against defendant Kreuger for failing to provide him adequate medical care after the assaults.

- Fourth and Fourteenth Amendment claims against supervisors Ourada, Sunde, Westerhaus, and Wall for knowing about widespread physical and sexual abuse at the facility but doing nothing to address the problem.

3

**A. Claims against defendants directly involved in events**

    **1. Merits of Smalls's claims**

Because Smalls was a juvenile detainee during the events in question and not a convicted prisoner, his excessive force, strip search, and medical care claims fall under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment. *See* Dkt. 16, at 2 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–400 (2015); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). To succeed on a claim under the Fourteenth Amendment, Smalls must show that the defendants acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. *Miranda*, 900 F.3d at 354. It is not enough to show that they acted out of negligence or even gross negligence. *See Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (citing *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018)). Smalls must also show that defendants' actions were objectively unreasonable. *Miranda*, 900 F.3d at 354. This determination is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. In terms of claims about implementation of security measures, this means that Smalls must show that the security measure is not rationally related to a legitimate governmental purpose or at least exceeds the need to serve a legitimate purpose. *Id.* at 398. If so, the measure is a form of punishment, which violates the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

    I'll start with Smalls's claims against defendants Schmidt, Curtis, McAllister, Meunier, Webster, and Krueger, the staffers who he says were directly involved in beating him, sexually humiliating him, and failing to provide him with medical care. Those defendants contend that they should be granted summary judgment because there is no evidence supporting Smalls's

4

allegations that they harmed him. Ordinarily, defendants facing claims like this would provide declarations explaining their version of events. None of these defendants have done so. Instead, they note that Smalls didn't file detainee grievances about the events in question, even though he often filed grievances while in detention, including for issues as minor as detainees' breakfast juice cups not being filled enough. They also note that Smalls didn't mention the assaults in his disciplinary proceedings stemming from his altercation with other detainees; instead, he waived a formal due process hearing and checked a box admitting that he was guilty of rules infractions.

The argument that Smalls doesn't have evidence supporting his claims is meritless because Smalls indeed provides evidence that defendants harmed him. Smalls provides his own declaration in support of his opposition brief detailing his version of events, as well as the declaration of another detainee, Quentin Apkarian, who says he observed defendant Schmidt and Curtis beat Smalls. Dkt. 47 and Dkt. 48. Smalls uses these documents to support his proposed findings of fact detailing his version of events. Defendants attempt to dispute many of these proposed findings by saying that Smalls does not provide evidentiary support, but that is plainly incorrect. As defendants should be well aware, at the summary judgment stage it's perfectly acceptable for a party or witness to submit a declaration detailing events that they experienced firsthand. Moreover, even before the summary judgment stage Smalls submitted a verified complaint stating under penalty of perjury that his allegations were true. Dkt. 1. In short, from the inception of this lawsuit Smalls has provided evidence supporting his version of the events. Defendants' argument to the contrary is frivolous.

Perhaps defendants mean to say that Smalls's account of events is not credible because he didn't file a grievance about the alleged abuse or raise those issues in disciplinary

proceedings. Smalls counters by saying that he did write to supervisors outside of the grievance or disciplinary process. But, as defendants should know, the court cannot assess Smalls's credibility at the summary judgment stage; I must resolve any disputes of fact in his favor as the non-moving party. Given Smalls' account that defendants badly beat him, sexually assaulted and humiliated him, and then failed to give him medical care for his injuries, Smalls has raised a genuine dispute of material fact over whether defendants violated his Fourteenth Amendment rights.

2. **Qualified immunity**

Defendants also argue that they are entitled to summary judgment under the doctrine of qualified immunity. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Put another way, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine translates into a two-part test: (1) whether the public official violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the alleged violation. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). A right is "clearly established" when a reasonable official would know that his "conduct was unlawful in the situation he confronted." *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 915 (7th Cir. 2011) (citations omitted).

I've already concluded that there are factual disputes regarding Smalls's excessive force, strip search, and medical care claims. Defendants contend that Smalls cannot show a violation of clearly established constitutional rights because "all Defendants followed applicable

Department of Corrections policies and procedures in handling security at the institution" and because "no Defendants knowingly violated the law or can be seen to be incompetent." Dkt. 42, at 7; Dkt. 49, at 6. But the proposed findings of fact that defendants cite for the proposition that defendants followed DOC procedures refer only to defendant supervisory officials Sunde and Wall, *see* Dkt. 40, ¶¶12–13, and the general tenor of defendants' qualified immunity argument seems to be focused on the supervisory officials even though defendants say that *all* of them are entitled to qualified immunity. Even if I assume that defendants intend to include in their qualified immunity argument the defendants that Smalls says were directly involved in the events, I will reject that argument. Smalls's version of events describes defendants' conduct as so egregious that there is no question that it violated his clearly established rights. These defendants are not entitled to qualified immunity.

### 3. Exhaustion

In their reply brief, defendants return to the fact that Smalls did not file a formal detainee grievance about the events at issue, and they contend that they are entitled to summary judgment on the ground that Smalls failed to exhaust his administrative remedies before filing this lawsuit, as required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a). But defendants did not file an exhaustion-based summary judgment motion by the January 2021 deadline set in the court's preliminary pretrial conference order. Although the court sometimes allows an exhaustion argument to be brought after that deadline, it's too late for defendants to raise it here: arguments raised for the first time in a reply brief are waived. *See, e.g.*, *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 636 (7th Cir. 2018).

Therefore, I will deny defendants' motion for summary judgment on Smalls's Fourteenth Amendment excessive force, strip search, and medical care claims against the defendants directly involved in those events.

### 4. Fourth Amendment claims

I also granted Smalls leave to proceed on Fourth Amendment claims about the reasonableness of the strip search performed by defendants Meunier and Webster. Given the development of the objective reasonableness standard for all Fourteenth Amendment detainee claims, it appears that the elements of Smalls's Fourth and Fourteenth Amendment claims are identical. So for the same reasons that I am denying defendants' motion for summary judgment on the Fourteenth Amendment claims against Meunier and Webster, I will deny their motion for summary judgment on the corresponding Fourth Amendment claims. Unless the parties persuasively argue otherwise in their pretrial submissions, I will merge the Fourth and Fourteenth Amendment claims in the jury instructions and verdict.

## B. Claims against supervisory defendants

Smalls's remaining claims are against defendants Ourada, Sunde, Westerhaus, and Wall—all supervisory officials at Lincoln Hills or within the Wisconsin Department of Corrections. Smalls contends that they violated his constitutional rights by failing to protect him from the harm he suffered even though they were aware of widespread physical and sexual abuse at the facility.

Ordinarily, supervisory officials are not liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*, meaning that they are not automatically liable for violations committed by their subordinate employees. But supervisors may be liable if they knew about unconstitutional "conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of

what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (citation omitted). Smalls also needs to show that he was harmed by a defendant's actions or inactions. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) ("risk is not compensable without evidence of injury").

In screening these claims, I warned Smalls that he would have to provide evidence showing that these supervisory officials were truly aware of a pattern of abuse and that they failed to take action to protect Lincoln Hills detainees. Smalls fails to provide any evidence supporting these claims. Smalls says that he complained about the incident to Ourada, who threatened to punish him if he kept bringing it up, but Smalls does not explain how this inflicted additional harm upon him. Similarly, Smalls offers two letters that he wrote approximately one year after the incident, one to the Lincoln Hills superintendent's office and one to Westerhaus, complaining of the incident. But these letters establish only that supervisors knew of danger to Smalls *after* the incident had already occurred. The closest Smalls comes to offering evidence of failure by the supervisor defendants to protect him is in his verified complaint, in which he conclusorily states that Ourada, Sunde, Westerhaus, and Wall were each "aware of the repeated and often alarming and growing number of physical and sexual assaults committed by [Lincoln Hills] staff . . . ." Dkt. 1, ¶ 17. But Smalls does not explain his personal knowledge of other assaults at Lincoln Hills, how he knows that defendants were aware of them, or how their awareness could have prevented the specific incident here. That isn't enough to raise a reasonable inference that the supervisory defendants turned a blind eye to danger facing Smalls. *See Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015) ("Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the

9

prisoner was in danger." (internal quotations and alterations omitted)). I will grant summary judgment to the supervisory defendants.[1]

## CONCLUSION

The following of Smalls's claims will proceed to trial:

- Fourteenth Amendment claims against defendants Schmidt, Curtis, McAllister, Meunier, and Webster for beating Smalls following an altercation with other detainees.

- Fourth and Fourteenth Amendment claims against Meunier and Webster for unreasonably strip searching him.

- A Fourteenth Amendment claim against defendant Kreuger for failing to provide him adequate medical care after the assaults.

To help Smalls prepare for trial, I will shortly issue a separate trial preparation order that provides detailed information about how trial works and how Smalls should prepare. Smalls should review the trial preparation order carefully and notify defendants' counsel or the court if he has specific questions about preparing for trial.

---

[1] The supervisory defendants also contend that they are entitled to qualified immunity on Smalls's claims against him. Because I am dismissing these claims on the merits, I need not consider defendants' qualified immunity argument.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 35, is GRANTED in part as discussed in the opinion above.

2. Defendants Ourada, Sunde, Westerhaus, and Wall are DISMISSED from the case.

Entered December 3, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge